### BENNETT HIGHFILL v. STATE.

No. A-4138.    Opinion Filed April 5, 1924.
(224 Pac. 729.)

(Syllabus.)

1.  **Evidence—Evidence Corroborating Accomplice Sufficient.** For evidence held to be sufficient to corroborate the evidence of the accomplices, see body of opinion.

2.  **Trial—Credibility of Witnesses—Instruction that Witnesses Accomplices as Matter of Law Properly Refused.** Where there is even slight conflict in the evidence as to whether or not any witnesses are accomplices of the defendant in the commission of the crime, the trial court is not required to give an instruction to the effect that as a matter of law such witnesses are accomplices.

3.  **Appeal and Error—When Refusal of Requested Instruction Cause for Reversal.** The refusal to give a requested instruction will not be held to be reversible error unless in the opinion of this court, after examination of the entire record, it appears that the error complained of has probably resulted in a miscarriage of justice or constitutes a substantial violation of a constitutional or statutory right.

4.  **Trial—Remarks of Court to Jury not Prejudicial as Attempt to Coerce Verdict.** Remarks of the trial judge to the jury examined and held not to be such as tended to coerce the jury to return a verdict.

5.  **Evidence—Admissibility Though Incidentally Disclosing Probable Guilt of Another Crime.** Evidence indicative of guilt and tending to some extent to elucidate the crime charged ·is admissible, although incidentally it may disclose that the defendant is probably guilty of another crime.

6.  **Trial—Instruction on Defense of Alibi Approved.** An instruction on the subject of alibi examined and held to fairly cover the law as applicable to the defense of alibi interposed in this case.

7.  **Trial—Instruction. not Erroneous as Comment on Weight of Evidence.** For an instruction held not to be a comment on the weight of evidence, see body of opinion.

Appeal from District Court, Harper County; Arthur G. Sutton, Judge.

Bennett Highfill was convicted of the crime of robbery in the first degree, and he appeals. Affirmed.

Swindall & Wybrant and C. H. Wyand, for. plaintiff in error.

George F. Short, Atty Gen., and N. W. Gore, Asst. Atty. Gen., for the State.

MATSON, P. J.   Bennett Highfill was convicted on the 4th day of June, 1921, in the district court of Harper county, Okla., of the crime of robbery in the first degree, and sentenced to serve a term of 10 years' imprisonment in the state penitentiary. From the judgment rendered against him, defendant appealed to this court by filing herein on December 3, 1921, petition in error with case-made attached.

It is contended that the evidence is insufficient to sustain the conviction, in that there is no sufficient corroboration of the accomplices Joseph Hierholzer and Charles Brankel.

This is a companion case to that of Tom Dickson v. State, 26 Okla. 403, 224 Pac. 723, this day decided. The pros-

ecution involved the robbery of the Citizens' State Bank of Salt Springs, Okla., on the 30th day of March, 1921. The record in this case is very voluminous, including about 900 pages of typewritten matter. To enter into a lengthy discussion, therefore, of all the circumstances tending to corroborate the accomplices Hierholzer and Brankel, and to connect this defendant with the commission of the offense, would prolong this opinion to too great a length. We will confine the discussion only to a few of these circumstances which we believe are sufficient for that purpose.

The defendant, Highfill, was a resident of Woodward county, Okla., a married man, about 45 years of age, and his family consisted of a wife and several small children. About two months previous to the robbery of the Salt Springs bank, Bob Rancho, who had been a resident of the community in which Highfill lived, appeared at Highfill's house driving a Buick automobile in which Joe Hierholzer, Hershel Trainer, and Frank Gates were also riding. These men had escaped from the jail at Clayton, N. M., and the car in which they were riding was a stolen car. They stayed at Highfill's house for several days. About a week after they had first arrived there Trainer and Gates, and perhaps Rancho, made a trip by automobile to Mooreland, Okla., and there became intoxicated and created a disturbance in that town which caused an investigation by the officers there that afterwards led to the arrest of Trainer and Gates near Highfill's place and the return of Trainer and Gates to Clayton, N. M. Highfill had knowledge of the fact that Trainer and Gates had been arrested and taken by the officers. At the time of the arrest of Trainer and Gates, Hierholzer was concealed some place on Highfill's premises, and the officers failed to find him. Thereafter Highfill assisted Hierholzer in making a removal to the premises of Thomas Dickson, where Hierholzer

stayed until the time of this bank robbery, a period of time covering about 6 or 8 weeks. During this time Highfill made several trips to Dickson's place, and the evidence shows he was in consultation with Dickson, Hierholzer, and Charles Brankel on Dickson's place. One of these consultations occurred on the day immediately preceding the bank robbery; another on a day about a week preceding the bank robbery.

The evidence further discloses by the accomplice Brankel that he and Highfill furnished the horse which Hierholzer rode at the time he robbed the bank. The circumstances disclosed by the state's evidence are sufficient to corroborate Brankel to the effect that Highfill assisted him in procuring this horse. Highfill's conduct on the day immediately preceding the bank robbery and on the day of the bank robbery indicates that he had knowledge that the robbery was to take place, and that he was a guilty participant therein. After the robbery was committed, Highfill assisted his confederates Dickson and Brankel in taking Hierholzer, who was then wounded, from the place where he had been concealed on Dickson's premises to the home of Jack McGee. This occurred late at night, and when they were apprehended in this act by the officers Highfill said, "We captured your bank robber and are bringing him in," and Brankel said, "We are bringing him in for the reward. We captured him down in Deke Dunn's pasture, wandering around on the prairie." That Highfill was standing within six or seven feet of Brankel at the time he made this latter remark and made no comment on it whatever, when, as a matter of fact, Highfill knew that Hierholzer had not been captured wandering around in Deke Dunn's pasture, but had been brought from an old cabin near a canyon on Tom Dickson's place by a circuitous route that led through a rough and hilly country, through fields and pastures, often off of the traveled highway.

Further it is disclosed that at the time the officers arrested Trainer and Gates the following occurred:

"Q. When you went over there to arrest Trainer and Gates at that time, you had a conversation with Bennett Highfill about those boys? A. Yes. Q. And in that conversation now, what was said; did you ask about those boys? A. Yes, sir. Q. What did he say about them? A. Well, me and Welch drove up there and Bennett was out west of the house, coming down the road to the car and when we drove up there I says—I says, 'Bennett, where is those boys that drove this car down to Mooreland yesterday?' Well, he spoke up and says, 'I don't know.' Well, I walked around and looked in the back of the car and one of the boys' hats was laying in the back end of the car, and I says, 'Whose hat is this back here?' And Bennett looked back there and kinda surprised and he says, 'I don't know whose hat that is.' And I says, 'Now, Bennett, you are just coming back from where those boys have gone, just got back from that trip.' Well, he spoke up then and says, 'Now,' he says, 'them boys were here last night,' and he says, 'They were drunk, blackguarding, and cursing around my family and I run them off.' And he says, 'You might find them over to Clarence Gray's. Q. But at first he told you he didn't know anything about where they were? A. Yes."

That on another occasion in the following week the same officers went to Highfill's house to look for Hierholzer, but not finding Highfill at home they went over to Clarence Gray's house and there found Highfill, and Highfill told them that Hierholzer had left his place on the Sunday preceding, and that he did not know where Hierholzer was, when in truth and in fact he did know that Hierholzer at that time was at Tom Dickson's place, and that he (Highfill) had furnished the horse for Bob Rancho and Joe Hierholzer to ride over to Tom Dickson's place. These transactions occurred over a month before the robbery, and show that at that time

Highfill was assisting in concealing Hierholzer in order to prevent his arrest and return to Clayton, N. M.

There are many other incriminating circumstances in this record which dovetail one into the other, and, when considered all together, are unexplainable consistent with the innocence of this defendant, and which in the opinion of this court tend clearly, when so considered, to connect this defendant with the commission of the crime of which he was convicted, and for that reason are sufficiently corroborative of the testimony of the accomplices Hierholzer and Brankel. As to some of these circumstances, reference may be had to the opinion in the Dickson Case.

Counsel for defendant requested the court to give the following instruction:

"The court instructs the jury that under the law the witnesses Joe Hierholzer and Charles Brankel are what is known in law as accomplices, and a conviction cannot be had upon the testimony of such accomplices unless their testimony is corroborated by such other evidence as tends to connect the defendant Bennett Highfill with the commission of the offense, and the corroboration required by law is not sufficient if it merely shows the commission of the offense or the circumstances thereof."

The trial court gave the following instruction, which is excepted to by counsel for the defendant:

"One who knowingly, voluntarily, and with a common intent with the principal offender, is concerned and unites in the commission of a crime, is an accomplice. A conviction cannot be had upon the testimony of an accomplice or accomplices, unless he or they be corroborated by such other evidence as tends to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely shows the commission of the offense, or the circum-

stances thereof. It is not necessary, however, that the corroboration should go so far as to establish by itself and without the aid of the testimony of the accomplice, the fact of the commission of the offense by the defendant. If the corroborating evidence tends in some degree to connect the defendant with the commission of the crime, it is sufficient."

Under the testimony of Hierholzer and of Brankel, each were admittedly accomplices of the other in the commission of the crime, and also coconspirators and accomplices of Tom Dickson and the defendant, Bennett Highfill, in the commission thereof.

It is contended, therefore, that because there was no conflict in the evidence on the part of the state as to whether or not the witnesses Hierholzer and Brankel were accomplices of this defendant, the court should have given the requested instruction and that the error occasioned by the refusal of the court to give the requested instruction was not cured by the giving of the instruction above excepted to.

Counsel rely upon the case of Moore v. State, 14 Okla. Cr. 292, 170 Pac. 519. In the Moore Case, the instruction requested and refused, as shown by the body of the opinion in that case, is in substance the instruction given by the court in this case, and in the Moore Case it was held that under the state's theory the defendant was entitled to have such an instruction given when requested by him.

The instruction here requested asked the court to determine as a matter of law that the witnesses Joe Hierholzer and Charles Brankel were accomplices of the defendant, Bennett Highfill. While the evidence of the witnesses Hierholzer and Brankel, as heretofore stated, if believed, would as a matter of law constitute them accomplices of the defendant, Highfill, the defendant introduced a number of witnesses in

addition to his own testimony in an attempt to establish an alibi and to discredit the testimony of Hierholzer and Brankel to such an extent as to clearly create an issue of fact for the determination of the jury as to whether or not Hierholzer and Brankel committed this robbery by themselves or in conjunction with Dickson and this defendant. In McKinney v. State, 20 Okla. Cr. 134, 201 Pac. 673, this court held:

"Where the evidence is conflicting as to whether or not a witness participated in committing the offense charged, the question as to whether or not such witness is an accomplice is one of fact for the jury; but where the acts and conduct of the witness are admitted, it becomes a question of law for the court to say whether or not those acts and facts make the witness an accomplice."

We are of opinion that there is enough conflict in the evidence in this record as to whether or not Hierholzer and Brankel were in fact accomplices of this defendant as not to require the giving of the requested instruction, and that the one given and excepted to was a fair statement of the law as applicable to the issues on this question.

There is another reason that impresses this court with the conclusion that this judgment should not be reversed because of this alleged error. It is this: Section 2822, Compiled Statutes 1921, provides in part:

"No judgment shall be set aside or new trial granted by any appellate court of this state in any case, civil or criminal, on the ground of misdirection of the jury, * * * unless, in the opinion of the court to which application is made, after an examination of the entire record, it appears that the error complained of has probably resulted in a miscarriage of justice, or constitutes a substantial violation of a constitutional or statutory right."

In construing the foregoing statute, this court has held:

"Before this court can reverse a conviction upon the ground that the trial court erred in the admission or rejection of evidence, or in its instructions to the jury, we must further find, from an inspection of the entire record, that appellant was injured thereby; and to determine this issue the court must consider the question as to whether the appellant is guilty or innocent of the offense charged." Fowler v. State, 8 Okla. Cr. 130, 126 Pac. 831.

Also see Meiggs v. State, 16 Okla. Cr. 557, 185 Pac. 450; Thompson v. State, 16 Okla. Cr. 716, 184 Pac. 467; Johns v. State, 8 Okla. Cr. 585, 129 Pac. 451; Cole v. State, 18 Okla. Cr. 439, 195 Pac. 901; Mobbs v. State, 18 Okla. Cr. 77, 192 Pac. 823.

The substance of the latter decisions is to the effect that section 2822 is a limitation upon the power of this court to set aside a judgment of conviction and grant a new trial on the ground of the misdirection of the jury or other grounds stated in said section, unless there has been a clear miscarriage of justice or a substantial violation of a constitutional or statutory right of the defendant. It is the duty of this court to so construe such statute that the evident legislative intent may find full expression in the decisions. It was not intended that this court should set aside a judgment of conviction because of error such as is presented by this assignment, unless it is apparent to this court from examination of the record that the trial probably resulted in a miscarriage of justice occasioned by such alleged error, or else resulted in depriving defendant of some constitutional or statutory right.

It cannot be said that the instruction given and excepted to deprived the defendant of any constitutional or statutory right. In fact, the instruction given is in consonance with the statute as to the necessity and extent of corroborating an accomplice. The instruction given was not violative of

any constitutional provision, as there is no constitutional provision on the subject. No impartial reader can peruse the record of the evidence in this case and say that the giving of this instruction and the refusal to give the requested instruction resulted in a miscarriage of justice. The corroboration of the accomplices in this case was so conclusive as to remove from the mind of any impartial arbiter any doubt as to the guilt of this particular defendant. The corroboration of the accomplices in this case is equally as conclusive and convincing as is the corroboration of the same accomplices in the case of Tom Dickson v. State, heretofore referred to, and this day decided.

For reasons stated, the conclusion is reached that this assignment of error presents no good ground for setting aside the judgment.

It is next contended that the trial court by certain remarks to the jury tended to coerce the jury to return a verdict. The record in support of this assignment of error is as follows:

"And thereafter the jury returns into court, the defendant being present in court and being represented by his attorneys, the state being represented by its attorneys, and the further following proceedings were had and done, to wit:

"By the Court (addressing the jury): Gentlemen of the jury, have you agreed on a verdict?

"By the Foreman: We have not.

"By the Court: Well, I don't want you to tell me how many are for conviction or how many are for acquittal, if any are for either, but you might indicate how you stand by saying you stand six to six or ten to two.

"By the Foreman: Ten to two is right.

"By the Court: Well, I am going to retire, gentlemen. If you agree on a verdict by—well, any time before 2 o'clock, I will come down and receive it. If you do not agree on it until after that time, why I will receive it in the morning if you have it for me. Is it any more comfortable for you in here than in your jury room?

"By the Foreman: I believe it is just about the same.

"By the Court: Well, if you prefer you may stay in here; if you do not, you may retire with the bailiff to the jury room. Suit yourselves.

"By the Foreman: Well, let's go back to our room.

"By the Court: All right.

"Whereupon the jury retire in charge of their sworn bailiff to further enter upon their deliberations in said cause and thereafter the jury returns in the court on this date, to wit, June 5, 1921, the defendant being present in person and represented by his attorneys and the state being represented by its attorneys, the further following proceedings were had and done, to wit:

"By the Court: Gentlemen, have you agreed on a verdict?

"By the Foreman: We have not.

"By the Court: I understand you wanted to make a report to the court.

"By the Foreman: Well, we don't think we can arrive at a verdict—unanimous verdict.

"By the Court: Well, your verdict will have to be unanimous, gentlemen. I don't know why you cannot agree on the verdict, gentlemen. The evidence is all before you. Do you stand the same as you did last night?

"By the Foreman: Yes, sir.

"By the Court: It is not the province of the court to compel any man to compromise with his conscience, gentle-

men—it is your duty as jurors to confer with each other and discuss the evidence between yourselves and to get to some agreement between yourselves as to what the facts are disclosed by that evidence and return your verdict according to the law and the evidence. As I stated, the evidence is all before you. If you do not agree on a verdict it will be necessary to try the case again, and the same evidence will have to be submitted to another jury. That will be a great expense and hardship perhaps to the defendant and to the state, and that next jury will not have any additional evidence in all probability, than what is before you now. As I say, it is your duty to fairly and candidly discuss the evidence between yourselves and try, if possible, to agree what the facts are as established by that evidence. I kept one jury out 72 hours one time and they finally brought in a verdict. I don't know what I will do with this jury, but I think, gentlemen, you ought to come to some agreement under this evidence as to what the facts are, and I believe that if you candidly and fairly discuss the evidence before you between each other you can come to some agreement as to what the facts are as established by that evidence. You have been out now something like 15—16 hours—you stood ten to two for something like 12 hours. I don't know whether you have tried to fairly discuss the evidence and come to some agreement as to what the facts are or whether there are ten mighty stubborn men on the jury, but anyhow I am going to let you go back to your jury room and see if you can't agree upon what the facts are and return your verdict accordingly. If that is all, gentlemen, you may retire.

"Whereupon the jury start to retire from the courtroom.

"By the Court (addressing the jury): Wait a minute, gentlemen. Just have chairs.

"Whereupon, the jury return to their seats in the jury box.

"By Mr. Wybrant: The defendant objects to the remarks of the court to the jury and takes an exception.

"By the Court: The defendant wanted to take some exceptions to the remarks made by the court to the jury and I wanted it to be done in the presence of the jury. That is all, gentlemen. You may retire.

"Whereupon the jury retire from the courtroom in company with their sworn bailiff to further enter upon the consideration of their verdict."

In connection with this assignment of error it is contended that the trial court threatened to keep the jury together an unreasonable length of time, that the jury were told that another trial would entail great expense and hardship to the defendant and to the state, and that the next jury would probably not have any additional evidence, and that the trial court further erred in calling the jury back so that the jury could hear the exception taken by counsel for the defendant to the remarks of the court.

Counsel for the defendant have cited no authority in support of this assignment of error. We consider the assignment without merit. We do not consider the remarks made as in any way tending to threaten the jury or indicating a desire on the part of the judge that the jury return a verdict of guilty. Exceptions to the remarks of the judge must be taken at the time the remarks are made. Miller v. Ter., 15 Okla. 423, 85 Pac. 239; Wishard v. State, 5 Okla. Cr. 610, 115 Pac. 796; McClendon v. State, 19 Okla. Cr. 382, 200 Pac. 464.

It is also contended that the trial court erred in admitting, over objection and exception of the defendant, certain incompetent testimony on the part of the witness Hierholzer. The witness Hierholzer was permitted to testify that about two months previous to the commission of this bank robbery he, together with two other escaped convicts, stayed at the home of Bennett Highfill for a period of about one

week, and the witness gave certain testimony to the effect that during said time Bennett Highfill knew that this witness and the others with him were escaped convicts, and that during such time the defendant went to the city of Woodward, Okla., to learn for these men if the officers there had any report about their escape and whether or not they were looking for them. It is contended that this evidence was incompetent and prejudicial, because it tended to show that the defendant was harboring criminals before it is charged that the conspiracy to rob the bank at Salt Springs was ever entered into.

The defendant, as a witness, was permitted to explain his alleged conduct as to some of these matters and as to others he made a complete denial. The evidence was competent as tending to connect the defendant with the accomplice Hierholzer as a guilty agent, and tended to show that he knew the character of the said Hierholzer as being that of a criminal and as a man such as would likely enter into a criminal scheme, and it was also competent to rebut the statements of the defendant that his relations with Hierholzer were perfectly innocent at all times. This evidence was indicative of guilt and tended to some extent to elucidate the crime charged. The weight of this evidence and of the credibility of the respective witnesses were questions solely for the jury. The fact that such testimony tended to show that the defendant Highfill knowingly harbored a criminal did not for that reason render the testimony incompetent if, for other reasons, the evidence was competent. McLaughlin v. State, 18 Okla. Cr. 627, 197 Pac. 717, 719; Miller v. State, 9 Okla. Cr. 255, 131 Pac. 717, L. R. A. 1915A, 1088; Littrell v. State, 21 Okla. Cr. 466, 208 Pac. 1048, 1050.

The trial court instructed the jury as follows:

"Some evidence has been offered by the defendant in this case for the purpose of proving an alibi—that is to say, that the defendant was in another place at the time of the offense charged to have been committed and at the time he is charged with having encouraged, aided, assisted, and abetted Joseph Hierholzer in the commission of said offense, and was so distant from said places that he could not have participated in said crime. When a defendant undertakes to establish an alibi, the evidence which he offers, taken with the other evidence in the case, must account for him during the whole period when his presence is material. If from the whole case and a consideration of all of the testimony the evidence in this behalf produced be sufficient to create in your minds a reasonable doubt as to whether the defendant was present at the times and places claimed by the state that the defendant encouraged, assisted, aided, or abetted in the commission of said offense, then you should give him the benefit of that doubt."

The defendant excepted to the giving of the foregoing instruction on the ground that it did not correctly define the law of alibi. In this connection it is contended that the trial court should have instructed on this subject to the effect:

"That if, after careful consideration of all the evidence in the case, the jury entertained a reasonable doubt that the defendant was in such other place when the crime was committed, then and in that event the jury should give the defendant the benefit of the doubt and acquit him."

The instruction fairly covered the law as applicable to the defense of alibi in this case. Under the state's theory it was not claimed that the defendant was present at the place of the commission of the offense, but that he entered into a conspiracy to commit the offense and aided and abetted therein, though not present at the time and place of its commission. The evidence as to alibi, therefore, was directed, not to absence at the time and place of the commission of the offense, but as to the absence of the defendant at the time

and place of the formation of the conspiracy to commit the crime, and at the place where the state's evidence showed the defendant to have been aiding and abetting the witness Hierholzer in the commission of said offense on the day that it was committed.    The instruction therefore, in our opinion, was sufficient.

The further objection to this instruction that the jury is not told that if they believed the alibi they should acquit the defendant, but are only told that they should give him the benefit of that doubt, is purely a technical objection, possessing no substantial merit when considered in the light of other instructions given to the effect that the defendant is presumed to be innocent and that the burden is on the state to prove his guilt beyond a reasonable doubt.

The trial court also gave the following instruction:

"Some evidence has been introduced in this case tending to impeach one of the witnesses.  One of the recognized means of impeaching a witness is to prove that his general reputation for truth and veracity is bad in the community in which he lives.  The opposing party may, if he chooses, contradict such testimony by introducing other competent witnesses to testify that his general reputation for truth and veracity in such community is good.  If you believe from the evidence in this case that the general reputation of the said witness for truth and veracity is bad in the community in which he lived, then you have a right to disregard his testimony as a witness as being unworthy of belief.  But you are not bound to disregard it.  It is for you to say, in the light of all the facts and circumstances, whether any or all of his testimony is worthy or unworthy of belief, and you will give it such weight as you deem it entitled to, or none, if entitled to none."

The latter instruction was excepted to by the defendant "as incorrectly defining the law relative to impeachment evidence, prejudicial in its nature, and contrary to the rule

announced by the Criminal Court of Appeals.'' It is first contended in the brief that said instruction constitutes a comment on the weight of the evidence. While this objection was not urged against the instruction at the time it was given, we think the objection is without merit. The trial court employed the expression ''some evidence,'' but did not indicate the amount of the evidence or the weight thereof. The following decisions are authority to the effect that such language does not constitute a comment on the weight of the evidence: People v. Cummings, 113 Cal. 88, 45 Pac. 184; State v. Brown, 28 Or. 147, 41 Pac. 1042; State v. Watkins, 11 Nev. 30; State v. Rose, 47 Minn. 47, 49 N. W. 404.

The instruction is not open to the objection urged against it, ''that the jury may disregard the whole of such witness' testimony unless the same is corroborated by other competent testimony,'' but on this subject see the case of Cole v. State, 18 Okla. Cr. 430, 195 Pac. 901, wherein the cases relied upon by defendant's counsel are specifically overruled.

The alleged errors as to the sufficiency of the information and as to the refusal of the trial court to instruct on the law relative to circumstantial evidence are covered in the opinion of this court in the companion case of Thomas Dickson v. State, 26 Okla. Cr. 403, 224 Pac. 723, this day decided.

After a full and impartial consideration of the entire record, the conclusion is reached that the errors complained of were not such as to require a reversal of this judgment, and that the evidence is sufficient to sustain the conviction, and that the judgment should be affirmed. It is so ordered.

BESSEY and DOYLE, JJ., concur.