**Juanita Louise REED, Plaintiff in Error,**

v.

**STATE of Oklahoma, Defendant in Error.**

No. A–12638.

Criminal Court of Appeals of Oklahoma.

Dec. 17, 1958.

Rehearing Denied Feb. 26, 1959.

---

**3.** Pierro v. Turner, 95 Okl.Cr. 425, 247 P.2d 291; State v. Smith, Okl.Cr., 320 P.2d 719, 727.

Maurice Nagle, Oklahoma City, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Owen J. Watts, Asst. Atty. Gen., for defendant in error.

NIX, Judge.

Juanita Louise Reed, hereinafter referred to as the defendant, was charged by information with the crime of Robbery, 1st degree, in the District Court of Oklahoma County. Defendant was tried be-

fore a jury who found her guilty of Robbery in the 2nd degree, but could not agree on the punishment and left same to be assessed by the trial judge who sentenced the defendant to serve 2 years in the Oklahoma State Penitentiary.

The record reflects that the defendant and the prosecuting witness met in a beer parlor where they were engaged in drinking beer. After a conversational acquaintance was made they left the beer parlor in defendant's car. Prosecuting witness contends that he accompanied the defendant at her request after she had told him her car would not start and she wanted him to help her start the same. Defendant said they left at the invitation of the prosecuting witness who wanted to take her to a square dance. Prosecuting witness left his parked car and rode with the defendant to the southeast part of Oklahoma City. The car was stopped in a rather isolated section. Defendant said they stopped to answer a call of nature. Prosecuting witness said defendant stopped the car under the pretense of borrowing some money from a girl friend. An unidentified person known only as Jack came to the car and attacked the prosecuting witness. Defendant testified she had seen the assailant around the beer parlor a number of times, but knew him only as Jack from Wewoka, and that she begged the assailant not to hurt the prosecuting witness. Prosecuting witness contends he was beaten and choked until he was about unconscious, and that when he came to he heard the assailant ask the defendant, "Have you got his pocket book?" She said, "No, it is in his hip pocket," and that defendant proceeded to remove his billfold, examine it, remove six dollars and said, "The S.O.B. ............, a lousy six bucks." That defendant left in her car and after the assailant hit him three or four times left him in a bar ditch. The case arose from this set of facts.

Upon appeal the defendant in her brief advances one assignment of error and relies exclusively for reversal upon one proposition of law asserted as follows:

"1. The court committed fundamental error in his unwarranted, unnecessary and improper questioning of the jury after the jury had received the charge and his untimely remarks in instructing the jury to retire for further deliberation."

That portion of the proceedings about which the defendant complains took place after the jury had been charged and had retired to deliberate were as follows:

"Thereupon, at 4:00 o'clock p. m., the jury returned to the courtroom where the following proceedings were had:

"The Court: The Bailiff advised the Court that you ladies and gentlemen had something you wanted to report. I don't know what it was. You will have to state it here in court. He can't act as a messenger very well.

"Foreman Barbour: Well, Your Honor, acting as Foreman of the jury, we were unable to reach upon a verdict of either guilty in the first degree nor in the second degree. We are not in accordance in any respect.

"The Court: Well, let me start asking a few questions now. Without you disclosing more than you need to, because you can't just discuss this thing with the Court of with these parties in here, it is a matter in the bosom of the jury, do you feel that if you deliberated further that you could reach a verdict, or do you feel that you have reached a point where you can't reach a verdict? That is what I am trying to get to.

"Foreman Barbour: My personal opinion is we would be wasting the Court's time to deliberate further. We are not in accord.

"The Court: Well, are you deadlocked? That is what we usually say.

"Foreman Barbour: We are deadlocked, yes, sir.

"The Court: How many ballots have you taken?

"Foreman Barbour: Two.

"The Court: Without disclosing how you stand, whether you are for the State or the defendant, you can disclose how you are divided numerically.

"Foreman Barbour: Well, on the first degree robbery, we were—(pause)

"The Court: Just—well, all right. I thing that is all right.

"Foreman Barbour: (continuing) Four guilty and eight not guilty. On second degree—

"The Court: (interrupting). I thought I made it plain to you, sir, you are not to disclose whether you are for one or the other. Isn't that plain?

"Foreman Barbour: I didn't understand that, sir.

"The Court: I said "Divided numerically." That would simply mean numbers, not telling whether you are for or against either side.

"Foreman Barbour: Eight to four, Your Honor.

"The Court: You took another ballot on the other, on the included offense; is that correct?

"Foreman Barbour: Yes, sir.

"The Court: And how do you stand on that one?

"Foreman Barbour: Eight to four also.

"The Court: Well, it would seem to the Court to be be wise for you to deliberate some further. We have been on this case most of the day. *I am not going to punish you in the matter, but I feel like you ought to try a little longer.* If you still can't reach a verdict and are dead-locked in the matter, I will check with you in about *thirty or forty minutes,* and we will see what the situation is then, but at this time I feel it best for you to go back to your jury room and deliberate further. (Emphasis ours.)

"Foreman Barbour: If you so instruct.

"The Court: Yes, sir. (Thereupon, jury returns to jury room to commence further deliberations. Thereafter, and at 4:15 o'clock p. m. the jury returned to the courtroom, where the following further proceedings were had.)

"The Court: I am advised by the Bailiff that you want the testimony of the police officer read back; is that correct?

"Foreman Barbour: That is correct, Your Honor.

"The Court: Well, as you have probably noticed, the court reporter has not only taken all of the testimony in shorthand but has also recorded it on a Dictaphone recorder. Inasmuch as he has been talking too much and has a sore throat, rather than read the testimony of the police officer from his shorthand notes, he will just turn the recorder on and will play the actual recording of the police officer's testimony back to you.

"Go ahead, Mr. Allen. (Thereupon, reporter plays recording made by dictaphone recorder of testimony of Bruce Shaw.)

"The Court: All right. Ladies and Gentlemen of the Jury, you may return to the jury room. (Thereupon, at 4:28 p. m. jury returns to jury room to commence further deliberations. And thereafter, at 4:58 p. m. the jury returned to the courtroom where the following further proceedings were had.)

"The Court: Do you have a verdict or do you have a further report; which is it?

"Foreman Barbour: We have a verdict, Your Honor.

"The Court: Will you hand it to the Bailiff for presentation to the Court, please? (Thereupon, Foreman Barbour hands verdict, which is hereinafter set out in this casemade, to the Bailiff who, in turn, hands same to Court.)

"The Court: Omitting the caption, the verdict is as follows: 'We, the jury, empaneled and sworn in the above entitled cause, do upon our oaths, find the defendant guilty of Robbery in the Second Degree, and leave her punishment to be fixed by the Court.' That is signed by D. N. Barbour, Foreman. Ladies and Gentlemen, is this your verdict? (All members of the jury answer in the affirmative.)

"The Court: The verdict will be received and filed, and you, Ladies and Gentlemen of the Jury, will be discharged from further consideration of this case. You will be excused to report back to Judge Hooker's courtroom up on the sixth floor at 9:00 o'clock in the morning."

Defendant strongly intimates in his brief that these remarks of the trial judge were improper in that they forced the jury to deliberate an unreasonable length of time and said remarks influenced the jury against the defendant by hastening the verdict. He particularly complains about the statement, "I am not going to punish you in the matter, but I feel like you ought to try a little longer," and asserts error upon the part of the trial judge in making inquiry of the jury as to how they stood numerically.

 In considering the assertion advanced by the defendant, we are fully aware of the duty of a trial judge to invoke a high degree of caution in his remarks to a jury. The trial judge, during the entirety of the trial, should forbear with dignity indulgence in any remarks which might tend to influence the jury in any respect. A thorough review of Tit. 22 O.S.1951 §§ 857–896 makes clear duties of a trial judge in the trial of a criminal cause. Basically, he is the referee or umpire of a contest between two opposing sides in a case at bar. He is to decide points of law, rule on the admissibility of evidence and maintain decorum. He is to instruct the jury upon all material issues of law, swear an officer or officers to keep the jury. He is to supervise the proceedings. He should refrain with diligence in becoming prosecutor or defense counsel. He should never invade the province of the jury, and by all means it would besmirch the dignity expected of a trial judge to intimate his feeling in the matter by action, innuendo or remarks.

 In the instant case we are unable with any quantity of refined reasoning to interpret the action or remarks of the trial judge as prejudicial to the rights of the defendant. The remarks of the trial judge, about which the defendant complains, cannot in the opinion of this court be interpreted as against the defendant nor do they intimate the feeling of the trial court in the matter. The entire discussion by the court to the jury reflects that the court's only purpose was to ascertain whether there was reasonable probability that the jury could reach a verdict. The trial judge was within his rights in making inquiry so he might exercise his discretion in requiring additional deliberation or to discharge the jury. See Tit. 22 O.S.1951 § 894. It cannot be said that the jury was required to deliberate an unreasonable length of time as the case was tried in one day and the verdict rendered before 5:00 p. m. The general rule is stated in 15 Am.Jur. Sec. 422, page 87:

"It is obvious that the court must determine when a disagreement, sufficient to justify a discharge of the jury exists. The length of time during which they must deliberate and the exact circumstances warranting the conclusion that they have failed to agree in a given case are, of necessity, matters resting largely in the sound discretion of the court. Hence, no specific period can be designated, nor can any absolute rule be laid down, to control this discretion; and unless it appears to have been grossly abused, the objection is not a ground for reversal. * * *"

The right of the court to inquire as to how the jury stood numerically has been

passed on by this court and approved. See Montgomery v. State, 19 Okl.Cr. 224, 199 P. 222; Highfill v. State, 26 Okl.Cr. 420, 224 P. 729.

We find no merit in the only assignment of error advanced by the defendant. The sufficiency of the evidence nor the punishment assessed is not questioned in defendant's brief. The case is therefore affirmed.

BRETT, P. J., and POWELL, J., concur.