1998 OK CR 24

**Napoleon LEWIS, Appellant,**

v.

**STATE of Oklahoma, Appellee.**

No. F–96–85.

Court of Criminal Appeals of Oklahoma.

April 15, 1998.

As Corrected Feb. 3, 1999.

Rehearing Denied Feb. 9, 1999.

**1162**

Charles Rouse, Sherry Oden, Oklahoma City, for appellant at trial.

Robert H. Macy, Brad Miller, Oklahoma City, for the state at trial.

Matthew D. Haire, Oklahoma Indigent Defense System, Norman, for appellant on appeal.

W.A. Drew Edmondson, Attorney General of Oklahoma, Robert Whittaker, Assistant Attorney General, Oklahoma City, for appellee on appeal.

### OPINION

STRUBHAR, Vice Presiding Judge.

¶ 1 Appellant, Napoleon Lewis, Jr., was convicted of First Degree Murder (Count I) and Child Abuse (Count II) in the District Court of Oklahoma County, Case No. CF–95–2135, after a jury trial held before the Honorable Richard W. Freeman. As to the First Degree Murder charge, the State filed a Bill of Particulars alleging three aggravating circumstances: 1) that Appellant knowingly created a great risk of death to more than one person; 2) that the murder was especially heinous, atrocious, or cruel; and 3) the existence of a probability Appellant would commit criminal acts of violence that would constitute a continuing threat to society. The jury found the existence of two aggravating circumstances [1] and assessed

1. The jury found that Appellant had created a great risk of death to more than one person (21 O.S.1991, § 701.12(2)) and that the murder was

punishment at death on the First Degree Murder conviction. The jury assessed punishment at life imprisonment for the child abuse conviction. The trial court sentenced Appellant accordingly. From this Judgment and Sentence Appellant has perfected his appeal.[2]

## FACTS

¶2 On March 28, 1995, after Anita Bebout had picked up her six-year-old daughter, Tressa, from elementary school, Appellant followed her in his orange pick-up truck. As Anita drove, Appellant bumped her car with his truck. Anita drove into the office parking lot of a mobile home park along Shields Avenue in Oklahoma City and Appellant followed. Anita got out of her car, picked up Tressa and was walking rapidly toward the office when Appellant got out of his truck, poured gasoline into a cup and then approached Anita and Tressa and threw gasoline on them. He ignited the gasoline, ran back to his truck and drove away.

¶3 The men in the mobile home office helped put out the fires on Anita and Tressa and called 911. Anita identified Appellant as the person who had thrown gasoline on them and set them on fire before she and Tressa were transported to the hospital by rescue workers.

¶4 The police located Appellant at his mother's house within the hour after the assault. When they arrived, Appellant ran from them. When he was apprehended, it was noted by police that Appellant smelled of gasoline. Appellant's truck was found parked behind his mother's house.

¶5 When police arrived at the police station with Appellant several reporters were already there. While he was being escorted inside, one reporter asked Appellant why he had done it. Appellant responded, "because I love her, and I caught her with another man." Appellant gave a video-taped confession to the police a short time later after he had been apprised of his *Miranda*[3] rights.

¶6 Anita Bebout died from her burn injuries on April 14, 1995. Tressa Bebout suffered severe burns but did not die.

## PRE-TRIAL ISSUES

■ ¶7 Appellant argues in his eighth proposition that three errors of constitutional magnitude occurred during voir dire. He first complains that when the trial court conducted voir dire of the potential jurors, the judge indicated his opinion that Appellant should be sentenced to the death penalty. During voir dire, the trial court advised the jurors that "[t]he law in Oklahoma provides that Murder in the First Degree is punishable, has three punishments. One is life, one is life without the possibility of parole and the third is death."[4] He then asked, "[i]f selected as a juror and you find the law and the evidence warrant the recommendation of the death penalty, could you vote for the death penalty?"[5] Appellant argues that because the trial court did not ask this same type of question about the other two possible punishments it indicated to the jury that he personally favored the death penalty. It is true that this Court has held "[t]he trial judge, during the entirety of the trial, should forbear with dignity indulgence in any remarks which might tend to influence the jury in any respect." *Nauni v. State,* 1983 OK CR 136, 670 P.2d 126, 132, *quoting Reed v. State,* 1958 OK CR 115, 335 P.2d 932, 936. However, we do not find that the trial court's questioning of the jurors in any way inferred to them his personal opinion on the propriety of the death penalty in this case. Rather, the judge was merely making the appropriate inquiry of whether the jurors could con-

especially heinous, atrocious or cruel (21 O.S. 1991, § 701.12(4)).

2. Appellant's Petition in Error was filed in this Court on July 25, 1996. His Brief–in–Chief was filed on February 3, 1997, and the State's Response Brief was filed on June 3, 1997. The case was submitted to this Court on June 9, 1997, and oral argument was heard on September 30, 1997.

3. 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

4. Trial Transcript I, 65.

5. Trial Transcript I, 65.

sider the death sentence as punishment if that punishment was appropriate. *See Cargle v. State,* 1995 OK CR 77, 909 P.2d 806, 817, *cert. denied,* 519 U.S. 831, 117 S.Ct. 100, 136 L.Ed.2d 54 (1996).

▮▮▮▮ ¶ 8 Appellant next complains that error occurred when during voir dire the prosecutor asked a prospective juror if he could "vote for the death penalty without doing violence to his conscience."[6] Appellant contends that this question was improper and resulted in the prospective juror being excused for cause. Appellant is correct in his assertion that questioning a prospective juror about whether the consideration of the death penalty will do violence to his or her conscience is improper. In *Cudjo v. State,* 1996 OK CR 43, 925 P.2d 895, 898, *cert. denied,* 519 U.S. 1126, 117 S.Ct. 981, 136 L.Ed.2d 863 (1997), this Court held that this question tends to be confusing and irrelevant as it does not address a legitimate concern. We further noted, "the only legitimate concern is whether each member is willing to consider the imposition of the death sentence, as one of the alternatives provided by state law, should the case be appropriate for that punishment." *Id.* However, while it is error to ask this question, this error is harmless where the record demonstrates that the correct standard was employed before the juror was dismissed. *See Mayes v. State,* 1994 OK CR 44, 887 P.2d 1288, 1297, *cert. denied,* 513 U.S. 1194, 115 S.Ct. 1260, 131 L.Ed.2d 140 (1995); *McGregor v. State,* 1994 OK CR 71, 885 P.2d 1366, 1375, *cert. denied,* 516 U.S. 827, 116 S.Ct. 95, 133 L.Ed.2d 50 (1995).

¶ 9 The record in the present case reflects that this prospective juror was excused only after extensive questioning by the trial court, the prosecutor and defense counsel. In response to questions asked by the trial court and prosecutor, the prospective juror repeatedly stated that it would be extremely difficult for him to consider imposing the death penalty. Defense counsel then asked him, "if you become a juror in this case and the guilt is established beyond a reasonable

doubt and the State of Oklahoma presents all the evidence that they have and it becomes apparent that if there ever was a death penalty case, this is a death penalty case, would you be able to vote for the death penalty under those circumstances?" In response to this question the prospective juror answered, "I don't believe I could."[7] Later, the prospective juror again indicated that he did not believe he could give serious consideration to the imposition of the death penalty.[8] It was after this exchange that the prosecutor moved to excuse this prospective juror for cause. The trial court found that it had been demonstrated that the prospective juror could not give full consideration to the complete range of punishment and excused him for cause. This Court finds that despite the initial improper inquiry made by the prosecutor, the juror was properly questioned and demonstrated an inability to consider all of the appropriate punishment possibilities. The prosecutor's improper inquiry did not result in the dismissal of this potential juror for cause and the trial court did not abuse its discretion in dismissing this juror for cause after the appropriate questions had been asked.

▮▮▮▮ ¶ 10 Appellant also argues that the prosecutor's use of peremptory challenges to remove two jurors was racially motivated and accordingly violated his constitutional rights. The United States Supreme Court addressed the steps to be followed in determining whether a jury has been constitutionally selected in a race-neutral manner in *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). In *Batson,* the Supreme Court held that a prima facie case of discrimination must first be established by the defendant. After the defendant establishes his prima facie case, the burden shifts to the State to come forward with a neutral explanation of why it utilized its peremptory challenge. *Id.* 476 U.S. at 97, 106 S.Ct. at 1723. The trial court then decides whether the defendant has established purposeful discrimination. *Id.* 476 U.S. at 98, 106 S.Ct. at 1724. On review, this Court will analyze the

---

6. Trial Transcript III, 19.

7. Trial Transcript III, 20–21.

8. Trial Transcript III, 21–22.

neutrality of the prosecutor's explanation as a legal issue. This review is only for clear error by the trial court. *United States v. Johnson*, 941 F.2d 1102, 1108 (10th Cir.1991); *Hernandez v. New York*, 500 U.S. 352, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991) (plurality opinion).

¶ 11 In the present case, defense counsel objected to the State's use of peremptory challenges to remove prospective Jurors Hogg and Pang. The prosecutor explained that he removed Mr. Hogg because he worked as a counselor at the Department of Corrections and dealt extensively with mental health professionals. The prosecutor was also concerned because Mr. Hogg's wife ran a half-way house and worked with persons convicted of crimes. The prosecutor stated that he exercised a peremptory challenge to remove Ms. Pang because he had extreme difficulty understanding her and he was concerned that she would not be able to communicate frankly and openly with the other jurors. The trial judge noted that he, too, could hardly understand what Ms. Pang was saying. After considering the reasons given by the prosecutor for removing these two prospective jurors, the trial court found the concerns to be racially neutral. Because we agree with the trial court's finding that these explanations were racially neutral, this proposition of error must fail.

¶ 12 Appellant argues in his ninth proposition that the trial court erred when it refused defense counsel's request to voir dire the jurors individually on the extensive media coverage of the case. Appellant notes that this Court has held "there is no right to sequestered, individualized questioning during jury selection although such may be allowed at the discretion of the trial court." *McCarty v. State*, 1995 OK CR 48, 904 P.2d 110, 115, *citing Cannon v. State*, 1992 OK CR 14, 827 P.2d 1339, 1341, *cert. denied*, 516 U.S. 1176, 116 S.Ct. 1272, 134 L.Ed.2d 219 (1996). However, in support of his argument that such was required in this case, he cites to cases wherein this Court held that where there is extensive pretrial publicity concerning the case, individualized voir dire may be warranted. *See Foster v. State*, 1986 OK CR 19, 714 P.2d 1031, 1037, *cert. denied*, 479 U.S.

873, 107 S.Ct. 249, 93 L.Ed.2d 173 (1986); *Driskell v. State*, 1983 OK CR 22, 659 P.2d 343, 356–57. However, this Court has also found that, "[t]he existence of extensive pretrial news coverage does not itself demand individual or sequestered voir dire. The crux of the issue is whether defendant can receive fair and impartial jurors." *Vowell v. State*, 1986 OK CR 172, 728 P.2d 854, 858 (citations omitted).

¶ 13 Appellant argues that because he was not allowed individualized voir dire, he did not receive fair and impartial jurors. In support of this contention, he notes that the two jurors who did acknowledge that they had been influenced by pretrial publicity were excused from the case. Appellant claims the remaining jurors were sent the message that if they wanted to remain on the jury panel they could not admit to having been influenced by media coverage of the case. This argument is purely speculative and in no way supports a finding that Appellant was actually denied fair and impartial jurors. As Appellant has not presented evidence to support a conclusion that the trial court abused its discretion in denying his motion for individual voir dire, this proposition is denied.

## FIRST STAGE ISSUES

¶ 14 The defense requested jury instructions on the lesser crimes of second degree murder and first degree manslaughter. The trial court declined to give these requested instructions and Appellant, in his first proposition, alleges that this decision constituted reversible error.

¶ 15 Appellant initially characterizes second degree murder and first degree manslaughter as lesser included offenses of first degree malice aforethought murder. Recently, this Court reaffirmed that "an offense is a lesser included one only where the greater offense cannot be committed without necessarily committing the lesser." *Willingham v. State*, 1997 OK CR 62, 947 P.2d 1074, 1080, *quoting State v. Uriarite*, 1991 OK CR 80, 815 P.2d 193, 195. In *Willingham* this Court applied this test and noted that second degree depraved mind murder is not a lesser

included offense of first degree malice murder. *Id.*

¶ 16 Appellant also argues the trial court erred in refusing to instruct on the lesser crime of first degree manslaughter. A homicide is heat of passion first degree manslaughter "[w]hen perpetrated without a design to effect death, and in a heat of passion, but in a cruel and unusual manner, or by means of a dangerous weapon...." 21 O.S. 1991, § 711(2). "The elements of heat of passion are 1) adequate provocation; 2) a passion or emotion such as fear, terror, anger, rage or resentment; 3) homicide occurred while the passion still existed and before a reasonable opportunity for the passion to cool; and 4) a causal connection between the provocation, passion and homicide." *Charm v. State,* 1996 OK CR 40, 924 P.2d 754, 760, *cert. denied,* ––– U.S. –––, 117 S.Ct. 1560, 137 L.Ed.2d 707 (1997). Appellant argues the evidence was sufficient to support a finding of heat of passion because it showed he believed that Anita Bebout was having sexual relations with other men while professing fidelity to him. It is Appellant's position that this evidence constituted adequate provocation for heat of passion manslaughter. The record reflects that the trial court determined this provocation was not enough to support the requested instruction because Appellant's realization that Bebout was involved with other men did not occur in close proximity to the rage which spurred his actions. There was a reasonable opportunity for the passion to cool. We find this reasoning to be sound and that there was no abuse of discretion in the trial court's decision not to give the requested instruction on heat of passion manslaughter as the evidence did not support such.

¶ 17 Appellant's defense at trial was that he was legally insane at the time of the assault. To support his defense, Appellant offered the expert testimony of Dr. Philip Murphy. In rebuttal, the State called its own expert, Dr. John Call. While questioning Dr. Call on direct examination, the prosecutor asked him about the information upon which he had relied in forming his opinion that Appellant was not legally insane at the time of the crime. Appellant argues in his second proposition that much of the information Dr. Call testified he had relied upon was unsubstantiated hearsay and improper character evidence which would otherwise have been inadmissible at trial.

¶ 18 During direct examination, Dr. Call testified that he based his opinion, in part, upon information that in 1988 Appellant had thrown liquid on his first wife, Vicky Sanders Lewis, and told her it was gasoline. The source of this information was not disclosed at trial. He also relied upon information from a 1993 hospital report alleging Appellant had assaulted Bebout and tried to run her off the road. In addition, Dr. Call testified about information regarding Appellant that he had gained from talking with Dr. Charles Smith and Sergeant Jerry Smith. Finally, the prosecutor questioned Dr. Call about his consideration of threats allegedly left by Appellant on Bebout's answering machine. The answering machine tapes were not admitted into evidence. Appellant alleges that the admission of this evidence was improper under the Oklahoma Evidence Code. In analyzing whether the expert's testimony about the information upon which he based his opinion was improperly admitted, it is important to note that no objection to this evidence was made at trial. Accordingly, we will review only for plain error. *Charm,* 924 P.2d at 764.

¶ 19 The Oklahoma Evidence Code places few restrictions on the information an expert may rely upon to form his or her opinions. In referring to such information, 12 O.S.1991, § 2703 specifically provides that "[i]f of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence." Accordingly, under section 2703 an expert may rely upon information considered to be hearsay if this information is of a type reasonably relied upon by experts in forming their opinions. The Code also provides, "[t]he expert may testify in terms of opinion or inference and give his reasons therefor without prior disclosure of the underlying facts or data, unless the court requires otherwise. The expert may be required to dis-

close the underlying facts or data on cross-examination." 12 O.S.1991, § 2705. Appellant argues that section 2705 provides no statutory authority for revealing to the jury the reasons underlying Dr. Call's opinion. While section 2705 only mandates that this information be divulged to the jury if required by the judge or on cross-examination, it does not preclude the admission of such absent the trial court's request or on direct examination. Further, the only limit placed on the disclosure of such information by this Court is that section 2705 cannot be used as "a license to parade a mass of inadmissible evidence before the jury." *Sellers v. State*, 1991 OK CR 41, 809 P.2d 676, 685, *cert. denied*, 502 U.S. 912, 112 S.Ct. 310, 116 L.Ed.2d 252. Appellant contends that this is precisely what happened in this case. Finally, Appellant argues that this evidence was inadmissible under 12 O.S.1991, § 2403 because its prejudicial impact far exceeded its probative value.

¶ 20 Upon review of the testimony at issue, we find that much of it concerned the type of information reasonably relied upon by psychological experts in evaluating claims of insanity; Dr. Call reasonably relied upon hospital records and information imparted to him by the doctor and police officer who had prior contact with Appellant. We do question, however, the reasonableness of Dr. Call's reliance on the threatening phone messages allegedly left by Appellant on Bebout's answering machine and the information that Dr. Call considered regarding past instances of abuse allegedly committed by Appellant against his first wife. This information is questionable because it is not clear from the record that Appellant was properly identified as the person who left the threatening messages or that the information regarding the instances of past abuse came from a reliable source. As Appellant suggests, the record provides no assistance in evaluating the reasonableness of Dr. Call's reliance on this information. However, although Dr. Call's testimony regarding the answering machine tapes and Appellant's alleged treatment of his first wife was admitted in error, it was

not met with objection and therefore, we must find it harmless unless it had a "substantial influence" on the outcome of the trial, or we have "grave doubt" as to whether it had such an effect. *Simpson v. State*, 1994 OK CR 40, 876 P.2d 690, 702. In light of the substantial admissible evidence upon which Dr. Call properly relied in forming his opinion as to Appellant's mental state, we have no grave doubts as to whether the improperly admitted evidence had a substantial influence on the outcome of the trial. Further, we find that the information upon which Dr. Call properly relied was admissible as it was probative and its probative value was not outweighed by the danger of unfair prejudice.

¶ 21 We note that while the expert's testimony regarding information he relied upon to form his opinion of Appellant's mental state was not reversible error in this case, it was problematic. In an effort to avoid similar problems in the future, we direct trial courts, upon request of either party, to hold an *in camera* hearing to determine whether an expert's reliance on particular information is reasonable. The necessity of such a hearing is not limited to expert witnesses who testify in the case-in-chief, but is also extended to expert witnesses in rebuttal.[9]

¶ 22 As part of his first proposition Appellant also challenges the instructions given by the trial court instructing the jury on how to utilize the evidence admitted in support of the expert opinions. The jury was instructed on how to assess information supporting expert testimony in Instruction 16A:

> You have heard witnesses qualified as experts testify as to their opinions. These witnesses also testified as to information relied upon in reaching their conclusions. This information was admitted **solely** for the purpose of enabling you to evaluate the expert testimony **and is not to be considered by you for any other purpose in**

---

9. Such a hearing is advocated by the Tenth Circuit Court of Appeals. *See Head v. Lithonia*

*Corp. Inc.*, 881 F.2d 941, 944 (10th Cir.1989).

reaching a verdict.[10]

In the next instruction, Instruction 17, the jury was instructed on other crimes evidence:

> Evidence has been received that the defendant has allegedly committed offenses or misconduct other than that charged in the Information. You may not consider this evidence as in any way tending to prove the guilt or innocence of the defendant of the specific offense charged in the Information. This evidence has been received **solely** on the issue of the defendant's alleged motive, opportunity, intent, preparation, and plan. This evidence **is to be considered by you only for the limited purpose for which it was received.**[11]

Appellant does not complain that Instruction 16A was incorrect or unwarranted. In fact, a limiting instruction clarifying that the evidence can only be used to evaluate the credibility of the testifying expert's opinion is required. *See Ake v. State,* 1989 OK CR 30, 778 P.2d 460, 467. Rather, he complains that these two instructions, when given together, were contradictory, confusing and mutually exclusive. This is because the only evidence of other crimes came in through the expert testimony of Dr. Call. Under the two instructions given, the jury was instructed that this evidence was to be considered only to evaluate the expert's opinions **and** only to support Appellant's motive, opportunity, intent, preparation and plan. Appellant is correct in his assertion that these instructions are confusing and contradictory. However, absent plain, fundamental error, reversal is not warranted. As we do not find this error to have had a substantial influence on the outcome of the trial, we do not find it to require relief. *Simpson,* 876 P.2d at 702.

 ¶ 23 Finally, Appellant claims the introduction of this otherwise inadmissible evidence denied him his constitutional right of confrontation. While this issue has not yet been addressed by this Court, the Tenth Circuit Court of Appeals has held that the confrontation clause was not violated where the defendant had access to the information relied upon by the expert and had opportunity to cross examine the expert. *United*

States v. Affleck, 776 F.2d 1451, 1458 (10th Cir.1985). With the exception of the information that Appellant had abused his first wife, all of the information relied upon by Dr. Call in forming his opinion would have been available to the defense. Further, defense counsel did have opportunity to cross examine Dr. Call about the basis for his expert opinion. Accordingly, we find no infringement upon Appellant's confrontation rights to have occurred in this case.

 ¶ 24 Appellant complains in his third proposition that the testimony of the State's expert, Dr. Call, regarding the information upon which he relied in forming his opinion, was evidence of other crimes. Appellant contends the introduction of this other crimes evidence was improper because he was not notified prior to trial of the State's intent to introduce other crimes evidence to prove motive, opportunity, intent, preparation or plan.

¶ 25 It appears that in fact the State did not introduce the evidence of Appellant's prior bad acts to prove motive, opportunity, intent, preparation or plan. All of the prior bad acts were introduced through the testimony of Dr. Call specifically for the purpose of supporting his expert opinion regarding Appellant's mental state at the time of the crime. As discussed in the preceding proposition, all prior crimes or bad acts were intended to have been introduced pursuant to 12 O.S.1991, §§ 2703 and 2705. Accordingly, it was not incumbent upon the State to have given notice of intent to introduce other crimes evidence under 12 O.S.1991, § 2404(B). Further, since this evidence was not offered to prove motive, opportunity, intent, preparation or plan, an instruction on other crimes evidence was not warranted. However, because no objection was made to the giving of this instruction, all but plain error has been waived. We do not find plain error here.

 ¶ 26 Appellant claims in Proposition VI that error occurred because the jury instructions on child abuse were contradictory and confusing. It should initially be noted

---

10. Original Record, 569 (emphasis added).

11. Original Record, 570 (emphasis added).

that defense counsel did not object to the instructions given or request any alternatives. Accordingly, our review here is limited to plain error. *Simpson,* 876 P.2d at 702.

¶ 27 The jury was properly instructed that in order to find Appellant guilty of child abuse, they had to find beyond a reasonable doubt that Appellant had:

1. Wilfully [sic] or maliciously;

2. Causing;

3. Injury, torture, maiming, or use of unreasonable force;

4. Upon a child under the age of eighteen years.[12]

Appellant argues that the problem arose when the trial court also instructed the jury that "willful" was defined as:

Purposeful. "Willful" is a willingness to commit the act or omission referred to, but does not require any intent to violate the law, or to injure another, or to acquire any advantage.[13]

Appellant argues that these instructions were confusing and contradictory as they allowed the jury to convict him of child abuse without finding that he acted intentionally toward Tressa Bebout.

¶ 28 In *Bannister v. State,* 1996 OK CR 60, 930 P.2d 1176, 1178, this Court agreed, holding that this same definition of "willful" "is at odds with the plain meaning of that term as it is used in the statutes defining the crimes of child abuse . . . ." Although similar instructions were found to have been reversible error in *Bannister* and *Hockersmith v. State,* 1996 OK CR 51, 926 P.2d 793, this Court more recently, in *Grady v. State,* 1997 OK CR 67, 947 P.2d 1069, held that this error alone does not require reversal. Because this was the only significant trial error which affected the charge of child abuse, relief need not be granted.

¶ 29 Appellant also argues in his sixth proposition that the evidence was insufficient to support a finding that he intended to harm Tressa Bebout. While it is true that the record only reflects Appellant's animosity toward Anita Bebout, it does not preclude the jury's finding that he intended to injure Tressa Bebout when he threw gasoline on her and her mother and set them on fire. When Appellant's actions are viewed in the light most favorable to the State, a rational trier of fact could have found that Appellant intended to injure Tressa Bebout. *Spuehler v. State,* 1985 OK CR 132, 709 P.2d 202. Accordingly, Appellant's argument is without merit.

¶ 30 Appellant contends in his seventh proposition that error occurred because the trial court allowed three defense witnesses to be impeached with out-of-court statements they had made to the prosecutor. He also claims this error was compounded by the trial court's failure to instruct the jury that this testimony could not be used as substantive evidence of guilt. It is first significant to note that of the specific instances of misconduct alleged, only one was met with contemporaneous objection and the nature of that objection is not entirely clear. Further, although Appellant asserts that the trial court erred in not giving the jury an instruction limiting the use of this evidence to impeachment, none was requested by Appellant at trial. Accordingly, as to these allegations, we need only review for plain error. *Howell v. State,* 1994 OK CR 62, 882 P.2d 1086, 1094, *cert. denied,* 514 U.S. 1113, 115 S.Ct. 1968, 131 L.Ed.2d 858 (1995).

¶ 31 This Court has held that inconsistent statements given to the police or a district attorney, whether sworn or unsworn, which were not made during a trial, hearing or other proceeding, or deposition, are not admissible as substantive evidence of guilt. *Omalza v. State,* 1995 OK CR 80, 911 P.2d 286, 302. However, such statements can be used to impeach a witness under 12 O.S.1991, §§ 2607 and 2613. *Id.* Appellant contends that the prosecutor's cross examination of defense witnesses in which he referred to prior statements that the witnesses had made to him, went beyond impeachment and was used by the prosecution as substantive evidence of guilt.

12. Original Record, 560.

13. Original Record, 560.

■ ¶ 32 The record reflects that during the State's cross examination of three defense witnesses the prosecutor asked about prior statements the witnesses made to him concerning Appellant's use of drugs and Appellant's propensity to lie and mislead. It would be a stretch to find, as the State argues, that this use of prior inconsistent statements was for the purpose of impeaching the witnesses' credibility as these issues were integral to proving the State's case against Appellant. Although the prosecutor's use of prior inconsistent statements was improper, we do not find it to have risen to the level of plain error in this case. Each witness denied or did not remember having made the damaging prior inconsistent statements and one witness, Dr. Murphy, explained how the prosecutor had misunderstood him. Finally, because this evidence was not a large part of the State's case, we find that the trial court's failure to give a limiting instruction was not plain error. *Sykes v. State,* 1977 OK CR 311, 572 P.2d 247, 249. Accordingly, no relief is warranted.

■ ¶ 33 Appellant argues in his tenth proposition that the admission into evidence of his videotaped confession was error because there was insufficient evidence to conclude that he knowingly and intelligently waived his Fifth Amendment rights to remain silent and to counsel. Appellant acknowledges that defense counsel did not object to the admission of this evidence at trial and accordingly, this Court will only review for plain, reversible error on appeal. *Mansel v. State,* 1991 OK CR 12, 805 P.2d 677, 680.

¶ 34 In *Moran v. Burbine,* 475 U.S. 412, 421, 106 S.Ct. 1135, 1141, 89 L.Ed.2d 410, 421 (1986), the Supreme Court addressed effective waiver of *Miranda* rights finding that:

First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the "totality of the circumstances surrounding the interrogation" reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the Miranda rights have been waived.

*See also Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973).

¶ 35 Appellant contends that even though the police apprised him of his *Miranda* rights before questioning him about the crime, he was suffering from the aftershocks of a mental breakdown which rendered him unable to understand his rights and the consequences of his decision to waive them. We find from a review of the video taped confession that Appellant displayed no inability to understand his *Miranda* rights. To the contrary, he appeared coherent and responsive to the questioning of the police officers. He appeared to answer questions willingly and toward the end of the interview he even inquired about the charges that would be filed against him. Absent an objection by defense counsel, the trial court would have had no reason to suspect, from viewing this taped confession, that Appellant had not knowingly and voluntarily waived his right to remain silent and his right to an attorney. Accordingly, we find no error in the trial court's decision to admit this videotaped confession into evidence.

■ ¶ 36 Appellant also complains in this proposition that an unwarned custodial statement was improperly admitted against him at trial. When the prosecutor questioned the police officer who apprehended Appellant, he asked the officer what had happened. The officer stated that he had Appellant place his hands against a wall and he patted Appellant down. The officer then asked Appellant if he was Napoleon Lewis and if he knew why the police were there. The officer testified that Appellant had responded, "probably so." [14] Appellant argues that because there is no indication from the record that he had been apprised of his *Miranda* rights at the time this question was asked, his response should not have admitted against him at trial.

14. Trial Transcript V, 49.

¶ 37 Under the United States Supreme Court's ruling in *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), statements made during a custodial interrogation are not admissible against a defendant if officers fail to warn defendant of constitutional rights before the custodial interrogation. Further, a custodial interrogation is defined as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Id.* 384 U.S. at 444, 86 S.Ct. at 1612. Although we find the record supports Appellant's assertion that he was not read his *Miranda* rights before he was asked by police as they arrested him if he knew why they were there, we do not find the admission of his response to be error which requires reversal. We find that Appellant's response, "probably so," was vague but mildly inculpatory. However, in light of his properly admitted confession taken later after he was advised of his *Miranda* rights, we cannot find this error to have deprived him of his constitutional right to a fair trial. This error was harmless beyond a reasonable doubt. *See Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967).

¶ 38 Appellant complains in his eleventh proposition that he was improperly forced by the trial court to submit to an examination by a psychologist chosen by the State. He acknowledges that when sanity is raised at trial, a defendant may be compelled to submit to an examination by a psychologist appointed by the court so that the State can have the opportunity to rebut the defendant's claim of insanity. *See Hain v. State*, 1993 OK CR 22, 852 P.2d 744, 751, *cert. denied*, 511 U.S. 1020, 114 S.Ct. 1402, 128 L.Ed.2d 75 (1994). However, Appellant argues that the trial court is not required to appoint only a psychologist chosen by or acceptable to the State. Appellant's argument is unpersuasive as he has failed to demonstrate that it is inappropriate for the trial court to appoint, for purposes of State's rebuttal, a psychologist requested by the State.

¶ 39 While Appellant has acknowledged that a criminal defendant claiming an insanity defense may be required to submit to an examination by the State's expert, he further asserts that the defendant's Fifth Amendment rights may be violated if he is forced to reveal details of the crime. This assertion is correct, as this Court held in *Traywicks v. State*, 1996 OK CR 54, 927 P.2d 1062, 1065, "while the defendant may be compelled to answer questions about his mental health, a constitutional violation may occur if the defendant is compelled to reveal details of the crime itself to the State's mental health expert." In *Traywicks*, this Court held that when a defendant raises an insanity defense he waives his Fifth Amendment right to silence regarding mental health issues but he does not waive his right to remain silent regarding the details of the crime. *Id.* Accordingly, in *Traywicks*, this Court found error occurred when the State's psychiatrist testified that Appellant had refused to answer questions about the crime committed in that case. *Id.*

¶ 40 Conversely, in the present case, there is no evidence from the record that the State's mental health expert questioned Appellant about the details of the assault. Dr. Call did testify that Appellant seemed uncomfortable at first because he perceived him to be "the enemy," but that Appellant eventually began to communicate with him. While Dr. Call testified that Appellant had told him about his use of cocaine, this information was relevant to the doctor's evaluation of Appellant's mental state; it was not a detail of the crime itself. Accordingly, we find no violation of Appellant's Fifth Amendment right against self-incrimination to have occurred in this case.

¶ 41 In his twelfth proposition of error, Appellant contends numerous photographs of Anita and Tressa Bebout were improperly introduced at trial as their probative value was substantially outweighed by their danger of causing unfair prejudice. 12 O.S.1991, § 2403. The photographs in question depict the charred face and legs of Anita Bebout at the time of her death and the injuries suffered by Tressa Bebout. Appellant acknowledges that these photos may

have been relevant to show the extent of injuries suffered by the victims but claims the emotional response that they provoke subsumes their probative value.

■■■■ ¶ 42 Decisions regarding the introduction of photographs are within the sound discretion of the trial court and will not be disturbed absent an abuse of discretion. *Hooks v. State,* 1993 OK CR 41, 862 P.2d 1273, 1280, *cert. denied,* 511 U.S. 1100, 114 S.Ct. 1870, 128 L.Ed.2d 490 (1994). Photographs which are gruesome or inflammatory may be admissible where their probative value is not substantially outweighed by the danger of unfair prejudice. *McCormick v. State,* 1993 OK CR 6, 845 P.2d 896, 898. While the photographs at issue in the present case are gruesome, they accurately depict the injuries suffered by the victims. We find that this probative value is not substantially outweighed by the prejudicial impact. Accordingly, we cannot find that the trial court abused its discretion in admitting these photographs into evidence.

¶ 43 Appellant also argues that error occurred when the jury was allowed to hear the 911 telephone call that was made immediately after the incident. This Court has held that 911 telephone calls can be relevant to corroborate witnesses' testimony and to illustrate what actually took place. *Pickens v. State,* 1993 OK CR 15, 850 P.2d 328, 335, *cert. denied,* 510 U.S. 1100, 114 S.Ct. 942, 127 L.Ed.2d 232 (1994). We find that the tape played for the jury in the present case was relevant for these purposes and that its probative value outweighed any prejudice to the Appellant.

### ISSUES AFFECTING BOTH STAGES OF TRIAL

¶ 44 Appellant alleges in his fourth assignment of error that prosecutorial misconduct during both stages of trial deprived him of a fundamentally fair trial and a reliable sentencing proceeding. He complains that during the first stage of trial the prosecutors expressed personal opinions on the evidence and the justice system, referred to facts not in evidence and misstated the evidence, defined reasonable doubt, denigrated defense witnesses and Appellant, and argued that the jury had a moral duty to convict. None of these comments were objected to at trial. Accordingly, as to these remarks, all but plain error has been waived. *Smith v. State,* 1996 OK CR 50, 932 P.2d 521, 531–32, *cert. denied,* —— U.S. ——, 117 S.Ct. 2522, 138 L.Ed.2d 1023 (1997). *See also Freeman v. State,* 1994 OK CR 37, 876 P.2d 283, 287, *cert. denied,* 513 U.S. 1022, 115 S.Ct. 590, 130 L.Ed.2d 503. Some of the comments not met with timely objection fell within the prosecutors' wide range of permissible argument. None were so egregious as to have risen to the level of plain error.

■■■■ ¶ 45 One of the first stage comments Appellant complains of on appeal was objected to at trial and overruled by the trial court. This occurred when the prosecutor referred to the information Dr. Call had relied upon in forming his expert opinion and argued this evidence as substantive proof of Appellant's guilt. This information, that Appellant had threatened Bebout over the telephone, had been introduced for the sole purpose of supporting the expert's opinion. Accordingly, it was error for the prosecutor to argue it for any other purpose, especially as substantive evidence of guilt. However, in light of the totality of evidence presented at trial, we do not find that this error requires reversal. *See Ledbetter v. State,* 1997 OK CR 5, 933 P.2d 880, 901. *See also Tibbs v. State,* 1991 OK CR 115, 819 P.2d 1372, 1380.

¶ 46 Appellant also complains that prosecutors made several improper comments during the second stage proceedings. He argues that they misstated the law regarding aggravating and mitigating circumstances, denigrated mitigating circumstances, referred to facts not in evidence, expressed personal opinions on punishment and the justice system and argued mitigating evidence as aggravating evidence. Again, most of the comments now at issue were not objected to at trial and accordingly, all but plain error has been waived. *Smith,* 932 P.2d at 531–32.

■■■■ ¶ 47 One of the second stage comments which was met with timely objection occurred when the prosecutor argued to the jury that justice required them to impose

the death penalty. While the prosecutor's plea was impassioned, it can be found to have been within the wide range of acceptable argument. The other comments which drew timely objection occurred when the prosecutors again referred to the information Dr. Call had relied upon in forming his expert opinion and argued this evidence in support of the alleged aggravating circumstances. Again, the evidence that Appellant had previously threatened Bebout and others had been introduced for the sole purpose of supporting the expert's opinion and it was improper for the prosecutor to argue it for any other purpose. However, because there was a vast amount of evidence properly admitted which supported the aggravating circumstances, we do not find that the inappropriate comments deprived Appellant of a fair trial. "Allegations of prosecutorial misconduct do not warrant reversal of a conviction unless the cumulative effect was such to deprive the defendant of a fair trial." *Duckett v. State*, 1995 OK CR 61, 919 P.2d 7, 19, *cert. denied*, 519 U.S. 1131, 117 S.Ct. 991, 136 L.Ed.2d 872 (1997). Because we do not find that the inappropriate comments deprived Appellant of a fair trial, affecting the jury's finding of guilt or assessment of the death penalty, we decline to grant relief on this proposition.

¶ 48 Appellant alleges in his fifth proposition that trial counsel made several errors during both stages of trial which denied him effective assistance of counsel. To show ineffective assistance of counsel, a defendant must meet the two-pronged test set out in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). First he must show that defense counsel's performance was deficient. This requires a showing that counsel made errors so egregious that he was not functioning as the counsel guaranteed by the Sixth Amendment. Second, he must show he was prejudiced by the deficient performance; that counsel's errors deprived him of a fair trial with a reliable outcome. *Id.* 466 U.S. at 687, 104 S.Ct. at 2064, 80 L.Ed.2d at 693. "Any showing that the outcome would have been different is sufficient." *Duckett*, 919 P.2d at 14. *See also Fisher v. State*, 1987 OK CR 85, 736

P.2d 1003, 1011–12, *cert. denied*, 486 U.S. 1061, 108 S.Ct. 2833, 100 L.Ed.2d 933 (1988).

¶ 49 Appellant first alleges that trial counsel was ineffective because he did not adequately object to the admission of much of the information relied upon by the State's expert in forming his opinion regarding Appellant's mental state. Appellant notes that trial counsel argued that the jury be instructed to only consider this evidence in evaluating the expert's opinion, but contends that this was not sufficient. He argues defense counsel should have attacked the reliability and admissibility of the information underlying Dr. Call's opinion as well. As we noted in our discussion of Proposition II, although the reliability of some of the information considered by Dr. Call was not established at trial, other information was reliable and proper for his consideration. Further, although upon proper and timely objection, the trial court should have precluded Dr. Call from testifying about his consideration of some of the information at issue, other of this information was properly considered by the jury in evaluating Dr. Call's expert opinion. Accordingly, while it would have been prudent for counsel to have objected to the admission of this evidence, it is unlikely that his objections would have been entirely successful. Counsel's failure to object to the admission of this evidence was ill-advised but not so egregious that this Court can find he was not functioning as the counsel guaranteed by the Sixth Amendment. Further, since some of the testimony at issue would undoubtedly have been properly admitted over objection, we cannot find that Appellant was prejudiced by the deficient performance.

¶ 50 Appellant also contends that trial counsel's performance fell below objective standards of effective counsel because he argued inconsistent defenses and conceded the existence of aggravating circumstances. In support of his position, Appellant first directs this Court's attention to a segment of defense counsel's first stage closing argument wherein he tried to explain the relevance of Appellant's admission that he messed up his life but he had to do it. Regarding this remark defense counsel stated:

What we've got doesn't prove any intent. It doesn't even address the intent as to Tressa. Does it talk about intent? Yeah, it talks about intent on Anita, on the attack on her. That's what they're clearly talking about here. Malice aforethought as to Anita? Yes. Premeditation? No. Sanity? No. It gives us something to think about on that issue.[15]

When viewed separate from the rest of closing argument this isolated statement seems at worst to be confusing. However, when viewed in conjunction with the rest of defense counsel's first stage closing argument, this Court cannot find this statement rendered counsel's performance deficient. Counsel reiterated several times throughout closing argument that there was no evidence to support a finding that Appellant acted with premeditation or malice aforethought or that he was sane at the time of the crime.

¶ 51 It is also argued that defense counsel was ineffective because he told the jury that Appellant had hostility toward Anita Bebout and that Appellant was sane during his interview with the police. By telling the jury that Appellant had hostility toward Anita but not Tressa, defense counsel in no way conceded that Appellant demonstrated malice aforethought or an intent to kill Anita Bebout. Also, by conceding that Appellant may have been sane during the interview, defense counsel did not denigrate the defense of insanity at the time the crime was committed. Accordingly, defense counsel cannot be found ineffective for making these two comments.

¶ 52 In his second stage opening statement defense counsel conceded one of the alleged aggravating circumstances: that the murder was especially heinous, atrocious or cruel. Later, in his closing argument defense counsel again referred to this aggravating circumstance and acknowledged that its existence opened the door for consideration of the death penalty and then acknowledged that the death penalty was appropriate for the jury's consideration. Appellant also takes issue with defense counsel's statement to the jury that Appellant had created a risk of death to more than one person. However, defense counsel followed this by saying that Appellant did not create this risk knowingly.

¶ 53 While it may not have been sound trial strategy to concede all of one aggravator and part of another, we are hesitant to say that by doing so defense counsel's performance was so deficient that he was not functioning as the counsel guaranteed by the Sixth Amendment. However, even if we did conclude that these comments rendered defense counsel's performance deficient, under the evidence presented in this case we would not be able to find that this error prejudiced Appellant. There is no question but that even absent these remarks by defense counsel the jury would have found the existence of the two aggravating circumstances in question. The aggravating circumstances that the murder was especially heinous, atrocious or cruel and that Appellant knowingly created a great risk of death to more than one person were overwhelmingly supported by the evidence presented in this case.

¶ 54 Next, it is alleged that trial counsel was ineffective because he made no motion to suppress Appellant's confession and other inculpatory remarks. Appellant argues that by not challenging the statements, defense counsel waived his right to have a judge determine whether he had made the statements voluntarily, knowingly and intelligently. He claims that even if the motion to exclude was unsuccessful, a hearing could have produced testimony helpful to his insanity defense at trial. There is nothing in the record which supports a finding that defense counsel's decision not to challenge the statements was error or that Appellant was actually prejudiced by this decision.

¶ 55 Finally, Appellant alleges that defense counsel was ineffective because he did not object to the dismissal for cause of a prospective juror who had said it would be difficult to vote for the death penalty. As noted previously in Proposition VIII, the juror in question was properly dismissed for cause after he clearly indicated that he would be unable to consider imposing the death

15. Trial Transcript VIII, 95.

penalty under any circumstances. Accordingly, defense counsel cannot be found ineffective for failing to object to this dismissal.

■ ¶ 56 In addition to the ineffective assistance of counsel claims raised by Appellant in his brief in chief, he filed an Application for an Evidentiary Hearing asserting five additional claims which he contends are supported by evidence not in the record but which was available to defense counsel at the time of trial. In this application Appellant requests an evidentiary hearing on 1) the failure of defense counsel to challenge allegations supporting expert testimony used at trial with information available; 2) failure of defense counsel to adequately cross-examine, or present any testimony in response to the State's rebuttal witness; 3) failure of defense counsel to present relevant mitigating evidence in the second stage of trial; 4) failure of defense counsel to produce readily available evidence on the voluntariness of Appellant's confession; and 5) counsel's failure to adequately consider and present evidence of alternative defense theories supported by the facts. Appellant requests this evidentiary hearing based upon Rule 3.11(B)(3)(b), *Rules of the Oklahoma Court of Criminal Appeals,* Title 22, Ch. 18, App. (1997). This rule allows an appellant to request an evidentiary hearing when it is alleged on appeal that trial counsel was ineffective for failing to "utilize available evidence or adequately investigate to identify evidence which could have been made available during the course of trial...." Once an application has been properly submitted along with supporting affidavits, this Court reviews the application to see if it contains "sufficient evidence to show this Court by clear and convincing evidence there is a strong possibility trial counsel was ineffective for failing to utilize or identify the complained-of evidence." Rule 3.11(B)(3)(b)(i), *Rules of the Oklahoma Court of Criminal Appeals,* Title 22, Ch. 18, App. (1997).

¶ 57 Upon review of the application and supporting affidavits we find Appellant has shown this Court that trial counsel could well have utilized other options at trial and that it may have been prudent for him to do so. However, Appellant has not shown by clear and convincing evidence a strong possibility that defense counsel was ineffective for failing to utilize or identify the complained-of evidence. Accordingly, we decline to grant Appellant's application for an evidentiary hearing.

## SECOND STAGE ISSUES

¶ 58 The State alleged and the jury found that Appellant had created a great risk of death to more than one person and that the death of Anita Bebout was especially heinous, atrocious or cruel. Appellant argues in his thirteenth proposition that these two aggravating circumstances are unconstitutional. He acknowledges that this Court has repeatedly rejected attacks on the constitutionality of these aggravating circumstance. *See Willingham,* 947 P.2d at 1087 (rejecting argument that the narrowed interpretation of the heinous, atrocious or cruel aggravating circumstance as is currently applied, is unconstitutionally vague); *Smith,* 932 P.2d at 536 (rejecting argument that the "great risk of death" aggravating circumstance is unconstitutionally vague and overbroad). Appellant asks that we reconsider these decisions. We decline to do so at this time.

¶ 59 In his next proposition Appellant sets forth three arguments previously rejected by this Court in order to preserve such for appellate review. He first argues that the instructions regarding the manner in which the jury was to weigh aggravating circumstance set forth an improper burden of proof. Again, he acknowledges that this standard has been repeatedly approved by this Court. *See Mitchell v. State,* 1994 OK CR 70, 884 P.2d 1186, 1206, *cert. denied,* 516 U.S. 827, 116 S.Ct. 95, 133 L.Ed.2d 50 (1995). *See also Rojem v. State,* 1988 OK CR 57, 753 P.2d 359, 370, *cert. denied,* 488 U.S. 900, 109 S.Ct. 249, 102 L.Ed.2d 238; *Brogie v. State,* 1985 OK CR 2, 695 P.2d 538, 544. We decline to revisit this issue.

¶ 60 Appellant next contends that the instructions given to the jury on the issue of mitigation permitted the jurors to ignore mitigating evidence altogether, and seriously diminished the effect of the mitigating evidence presented in this case. We note that the same or similar instructions to those given in

the present case were upheld against this challenge in *Pickens*, 850 P.2d at 339. We decline to hold otherwise at this time.

¶ 61 Finally, Appellant complains the jury instructions, taken together, implied that jury findings regarding mitigating circumstances must be unanimous, and that the jury should have been instructed that its findings do not have to be unanimous. This issue has previously been addressed by this Court and on prior occasions relief has been denied. *See Harjo v. State*, 1994 OK CR 47, 882 P.2d 1067, 1081, *cert. denied*, 514 U.S. 1131, 115 S.Ct. 2007, 131 L.Ed.2d 1007 (1995). *See also Bryson v. State*, 1994 OK CR 32, 876 P.2d 240, 262, *cert. denied*, 513 U.S. 1090, 115 S.Ct. 752, 130 L.Ed.2d 651 (1995); *Pickens*, 850 P.2d at 339. Although Appellant asks this Court to reconsider this issue at this time, we decline to do so.

 ¶ 62 In his fourteenth proposition Appellant argues that Oklahoma's amended capital sentencing statute has opened the floodgates for the introduction of highly emotional and irrelevant evidence. It is his position that victim impact evidence has no place in Oklahoma's death penalty scheme as our statutes require a balancing test of aggravating circumstances and mitigation and victim impact evidence is relevant to neither. He argues that victim impact evidence operates as irrelevant, improper, nonstatutory "super-aggravator" which will be present in every capital case. Appellant recognizes that this Court recently addressed these concerns in *Cargle*, 909 P.2d at 824–30. However, he contends that the guidelines proffered in *Cargle* were insufficient to remedy the problem. Appellant makes the bald assertion that his rights under the Due Process Clause and the Eighth Amendment were violated by the use of victim impact evidence but he declines to explain his position any further. Having reviewed the record and found no error in this regard, we decline to grant relief on this claim.

## ACCUMULATION OF ERROR

 ¶ 63 In his final proposition, Appellant contends the accumulation of errors in this case so infected the trial and sentencing proceedings that he was denied due process

of law and a reliable sentencing proceeding in violation of his rights under the Fourteenth and Eighth Amendments. This Court has held that where there is no error present, there can be no accumulation of error. *Bryan v. State*, 1997 OK CR 15, 935 P.2d 338, 365–66, *cert. denied*, —— U.S. ——, 118 S.Ct. 383, 139 L.Ed.2d 299. However, when there have been numerous irregularities during the course of the trial that tend to prejudice the rights of the defendant, reversal will be required if the cumulative effect of all the errors was to deny the defendant a fair trial. *Bechtel v. State*, 1987 OK CR 126, 738 P.2d 559, 561. While it can be found in the present case that there were irregularities during the course of the trial, even taken together, these cannot be found to have been so great as to have denied Appellant a fair trial. Accordingly, relief is not warranted.

## MANDATORY SENTENCE REVIEW

¶ 64 In accordance with our statutory duty, we must now determine whether the death sentence was imposed under the influence of passion, prejudice, or any other arbitrary factor, and also whether the evidence supports the jury's finding of the alleged statutory aggravating circumstances. *See* 21 O.S.1991, § 701.13(C). We are satisfied that neither passion, prejudice nor any other arbitrary factor contributed to the jury's sentencing determination. After carefully reviewing the evidence presented, we also find that it supported the jury's finding of the aggravating circumstances.

¶ 65 Finding no error warranting reversal or modification, Appellant's Judgment and Sentence is **AFFIRMED.**

CHAPEL, P.J., and LANE and JOHNSON, JJ., concur.

LUMPKIN, J., specially concurs.

LUMPKIN, Judge, specially concur.

¶ 1 I concur in the Court's excellent opinion affirming the judgment and sentence in this case.

¶ 2 However, it should be noted the criteria set out in *Strickland v. Washington*, 466

U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), for evaluating effectiveness of counsel has been further explained in *Lockhart v. Fretwell*, 506 U.S. 364, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). Applying the *Lockhart* standard, the record is void of any evidence the trial was rendered unfair and the verdict rendered suspect or unreliable.