HARTZ, Circuit Judge,
concurring.
Mr. Richie’s § 2254 application raises a number of challenges to his conviction and sentence. One or more may ultimately prove meritorious. At this stage, however, I must concur in reversal of the district court’s judgment, which addressed only one of the challenges. I agree with the essence of Judge Kelly’s analysis, but I write separately to explain further why I believe the present record does not justify the district court’s determination that the conduct of Mr. Richie’s defense counsel was objectively unreasonable.
Once Dr. Hemphill told defense counsel that he was relying on the statement of codefendant Waller to conclude that the state’s theory of the cause of death was correct, defense counsel had little room to maneuver. The best course of action would be to challenge the propriety of Dr. Hemphill’s reliance on an inadmissible confession by a codefendant. Indeed, defense counsel did just that, vigorously and repeatedly objecting that such use of hearsay was improper. The trial judge, however, overruled the objections.[1]
*1127 What could defense counsel do then? If she questioned Dr. Hemphill regarding why he changed his opinion after their prior conversation, he might well be permitted to testify to Mr. Waller’s statement. And if defense counsel were to ask what his opinion would be based solely on the medical evidence, the prosecutors on redirect would likely be permitted to elicit that the expert opinion was also based on Waller’s statement. Oklahoma has adopted a relatively relaxed view in permitting experts to testify about the matters properly relied on in forming their opinions, even when those matters are “unsubstantiated hearsay and improper character evidence.” Lewis v. Oklahoma, 970 P.2d 1158, 1166-67 (Okla.Crim.App.1998). (Unlike Judge McConnell, I do not read Lewis as saying that matters properly relied on by an expert may nevertheless be too unreliable to present to the jury in explanation of the expert’s opinion. Once the trial judge ruled that Dr. Hemphill could properly rely on Waller’s statement, it would be remarkable for the judge to refuse to permit Dr. Hemphill to explain the basis of his opinion if challenged by the defense.) It is not surprising that Mr. Richie’s trial counsel admitted at the habeas evidentiary hearing that during cross-examination she had not wanted to open the door for Dr. Hemphill to get Waller’s statement before the jury. Even one question regarding the consistency of the physical evidence with the defense theory could open the door. The single question on the matter that defense counsel asked on cross-examination was certainly not all one could hope for, but anything more precise could have led to disaster.[2]
*1128 For essentially the same reason, defense counsel would have to be cautious about calling a defense expert on the cause of death. Perhaps Mr. Waller’s statement could be elicited during cross-examination of the expert. More likely, Dr. Hemphill could be called as a rebuttal expert to explain the basis of his disagreement with the defense expert — namely, the statement by Mr. Waller.
Accordingly, it appears to me that defense counsel, rather than being inadequate, probably did about as well as she could have in the circumstances. She could have been more aggressive in challenging Dr. Hemphill; and, for the reasons explained by Judge. McConnell, she may have escaped unscathed. But given the enormous downside risk, it was not unreasonable to play it safe.
Further proceedings in district court are therefore necessary.[3] Mr. Richie raises serious issues concerning the propriety of Dr. Hemphill’s úse of Mr. Waller’s statement and the alleged failure of the state to provide counsel with exculpatory statements by Mr. Waller. The district court has not ruled on these matters because it granted relief on another ground. These unruled-upon grounds may prove to be meritorious in themselves, or exploration of these grounds may reveal deficient conduct of defense counsel that constitutes ineffective assistance. Our ruling today does not foreclose relief on these grounds.

. The first exchange regarding Dr. Hemphill’s reliance on Waller’s statement was as follows (my interstitial comments appear in brackets in bold type).
[PROSECUTOR]: ... Can you explain to the jury then how — what you believe to be the most likely explanation about how she hung?
*1126 [DEFENSE COUNSEL]: Objection, Your Honor, as to most likely. Ask to approach the bench.
THE COURT: Well—
[DEFENSE COUNSEL]: Objection, most likely.
THE COURT: I’ll overrule that, give you an exception.
[DEFENSE COUNSEL]: May we approach the bench?
THE COURT: All right.
(The following ensued out of the hearing of the jury.)
[DEFENSE COUNSEL]: Your Honor, I have no objection to him testifying about whether the medical evidence is consistent or inconsistent with some hypothetical situation. I do object to him testifying as to his opinion about what’s likely or unlikely for this manner of death to have occurred and one basis besides just whether he's qualified to testify about what's likely.
Beyond that, Your Honor, he bases his opinion upon evidence which is not admissible in this court. [Defense Counsel is now switching gears and raising a new objection to the proposed testimony.] Namely, there’s a statement from taken [sic] Waller that she was held up and suspended as the prosecutor demonstrated in opening argument. Danny Waller’s statement is not admissible here against us and yet, he bases his opinion upon their inadmissible evidence.

I think, and I don’t know, I get this from interviews with Dr. Hemphill previously, I do not think he can subtract or take that part of the evidence, that part of the inadmissible evidence out of his opinion.

And therefore, I don’t think he should be able to base his opinion which was based most likely on Danny Waller’s statement, only as to what is medically inconsistent and consistent with.

THE COURT: Can you rephrase your question, ask him how this could have occurred?
[PROSECUTOR]: I can, but may I respond—
THE COURT: Sure.
[PROSECUTOR]: — to the argument?
First of all, I’d, of course, say what does a medical examiner [sic]? Do they testify to the manner and cause of death. And they take into account all the circumstances including, if you will, pure medicine of it.

The evidence code allows an expert to rely on hearsay as long as it is the kind of thing on which people in that field ordinarily rely.

So whether or not he was relying on in part an explanation by Daniel Waller that would be inadmissible is beside the point in reference to his opinion. [The Prosecutor clearly understood the hearsay argument made by Defense Counsel.] Certainly, he would not, as I have cautioned him, of course, not to verbalize that statement at least in that way.
But one, he has stated in fact what a medical examiner does is talk about the manner and cause of death and give their opinion about that. And he can utilize as indicated that information that in fact is what a forensic pathologist does.
And so we believe that the question is proper and we believe that it is not unproper, but ordinarily that a pathologist in fact does this.
[DEFENSE COUNSEL]: Judge, if I may respond. He's testified as to the cause of death as being asphyxiation. He's testified as to the manner of death as being hanging. To go beyond that now gets him into testifying about what he thought somebody did to her.
THE COURT: All right.
[DEFENSE COUNSEL]: It's not proper.
THE COURT: I'll sustain the objection to the form of the question, most likely. But he can testify as to how this could have occurred.
[DEFENSE COUNSEL]: Judge, again if I could finish my record. He’s saying that he can testify about hearsay from Danny Waller.
THE COURT: I didn’t say it’s hearsay. I didn’t say that’s hearsay or not. You can ask, if you do that, what happens. You can get a certain result.
[This statement by the court is too cryptic for one to be certain what he is saying. But the statement is certainly consistent with the view that evidence relied upon by an expert in arriving at an opinion is not hearsay. Indeed, the view of this circuit has been that when an expert testifies about such a statement, it is offered not for the truth of the statement but to show how the expert arrived at the opinion, and therefore is not considered hearsay. See Wilson v. Merrell Dow Pharm., Inc., 893 F.2d 1149, 1153 (10th Cir.1990)].
[DEFENSE COUNSEL]: He can testify whether the medical evidence is consistent.
THE COURT: I've said that he can testify to how could you accomplish this. Maybe that's other—
*1127 [DEFENSE COUNSEL]: Okay. He can testify what's more or less likely.
THE COURT: I've sustained it to more likely. He can testify how it could.
Tr. 561-64 (emphasis added).
Later, when Dr. Hemphill expressed his opinion regarding how death occurred, defense counsel on several occasions objected that the opinion was tainted by non-medical evidence, saying "I object to that answer. It's not based upon his expertise.” Tr. 565. Defense counsel then twice moved for a mistrial based on Dr. Hemphill’s testimony, the second time explaining, "He does not have any proof of malice aforethought and by his hypothesis, through this kid [Waller], he gets it.... He has done so without that medical evidence and based on that, I move for a mistrial." Tr. 572.

. I do not believe that the court’s sustaining an objection to Dr. Hemphill's oblique reference to Waller’s statement meant that Waller’s statement could not be admitted even if defense counsel later challenged the basis of Dr. Hemphill’s opinion. The objection that was sustained arose as follows after Dr. Hemphill said that his findings were consistent with the prosecution’s theory of how death occurred:
[PROSECUTOR]: Do you have any information that that is not the way it occurred?
[DEFENSE COUNSEL]: Objection, Your Honor.
THE COURT: Overruled.
[PROSECUTOR]: I do have access and have had access since prior to the autopsy to information that someone who purported to have been there.
[DEFENSE COUNSEL]: Your Honor—
THE COURT: I'm going to sustain the objection.
Tr. 567.
On this occasion, the prosecutor clearly expected only a "No” answer. The answer was objectionable (besides being unresponsive) in that the information was not being offered to explain how the expert arrived at his opinion. (On the contrary, the question asked whether any information was inconsistent with his opinion); and the expert’s opinion had not yet been challenged, so there was no reason to permit the jury to hear relied-upon evidence that could have an improper prejudicial effect.
Perhaps defense counsel should not have worried about the possibility that the trial court would allow Dr. Hemphill to tell the jury about his reliance on Waller’s statement if the basis of his opinion were challenged. But such worry would seem to me to have been eminently reasonable in light of Oklahoma evidentiary law and the trial court's *1128 failure to be moved by defense counsel's complaints about Dr. Hemphill's reliance on Waller's statement.

. Judge McConnell is correct that the analysis in this concurrence was not set forth in the state’s brief, although the basis for the analysis was explored during cross-examination in federal district court of Mr. Richie's trial counsel. Nevertheless, we occasionally affirm a judgment on a ground not argued on appeal. See Elkins v. Comfort, 392 F.3d 1159, 1162 (10th Cir.2004). Here, we are reversing the federal district court but we are preserving the final judgment of the state court. Comity with the state courts is a particularly compelling reason to consider grounds for affirmance not argued on appeal. I recognize that deciding a case on grounds not argued on appeal may be unfair to the appellant (or, as here, the habeas petitioner) because of the lack of opportunity to respond to the argument for affirmance. In this case, however, I see little risk of such unfairness. And in any event, we are merely remanding for further proceedings, so Mr. Richie is not foreclosed from providing additional explanation on remand why, despite his trial counsel's concessions at the habeas hearing, it was objectively unreasonable for trial counsel not to confront Dr. Hemphill further on cross-examination.